IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


**GEORGE BAILEY, JR.,**

    Plaintiff,

v.                                                                                 CIV No. 00-1536 LH/KBM

**CHILDREN, YOUTH and FAMILIES DEPARTMENT
of the STATE OF NEW MEXICO, DEBORAH HARTZ,
DOUG MITCHELL, NICK GONZALES, TY HANNEMAN,
JUDITH HEBRELEE, KAREN HERRERA, and
HARI KRISHAN KHALSA,**

    Defendants,

## MEMORANDUM OPINION AND ORDER

    **THIS MATTER** came for consideration on the Motion for Summary Judgment (Docket No. 41) filed by Defendants Children, Youth and Families Department of the State of New Mexico ("CYFD"), *et al*. Having reviewed the material filed in this case and the applicable law, I conclude that summary judgment for the defendants shall be **granted**. Plaintiff's Title VII claim of religious discrimination shall be dismissed. Because Plaintiff concurs with summary judgment on his remaining claims, they too shall be dismissed. For these reasons, this case shall be dismissed in its entirety. A Final Judgment reflecting this dismissal shall be entered simultaneously with this Memorandum Opinion and Order.

**Procedural Background**

Plaintiff Bailey brought suit against his employers, alleging discrimination on the basis of race, religion, and disability. He further alleged that they conspired to violate his civil rights and retaliated against him for his complaints to the EEOC. Defendants subsequently filed a motion for summary judgment. In his response, Plaintiff concurred that summary judgment should be granted with respect to the non-religious claims, but maintained that there was sufficient proof of religious discrimination under Title VII to proceed to trial on that solitary issue.

**Factual Overview**

Plaintiff commenced employment with CYFD in a juvenile detention facility in February 1998. Plaintiff was employed, concurrently, as a minister with Mount Calvary Baptist Church and then Adat Yeshua Ministries. He was required, by his ministerial obligations, to be present for Sunday morning sermons. Defendants stipulated that they were aware of Plaintiff's religious beliefs and obligations. Plaintiff was initially scheduled to work at CYFD Monday through Friday, from 2:00 p.m. until 10:00 p.m. In October 1998, Plaintiff's work schedule changed to Tuesday through Saturday, from 2:00 p.m. until 10:00 p.m. The schedule changed again on December 4, 1998, and required Plaintiff to work Sunday through Tuesday from 6:00 a.m. to 2:00 p.m., and Wednesday and Thursday at his previously scheduled hours (2:00 p.m. until 10:00 p.m.). Plaintiff did not show up for work on December 14 (Monday), 15 (Tuesday), 16 (Wednesday), 17 (Thursday), 21 (Monday), and 22 (Tuesday), nor did he notify his supervisors of his intended absence during those days. He also missed a number of Sundays, the dates of which are unspecified. Plaintiff was informed of his dismissal on January 20, 1999.

**Applicable Legal Standards**

A motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c).

The movant bears an initial burden of production. In order to make a *prima facie* showing of entitlement to summary judgment, the movant must demonstrate that there is no dispute of material fact, and that the movant is entitled to judgment as a matter of law. *Id*. When the nonmovant bears the burden of persuasion at trial, as here, the movant may meet its initial burden of production by simply demonstrating that a critical element of the nonmovant's case lacks support in the record. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-325 (1986). Once this preliminary step has been satisfied, the burden shifts to the nonmovant, who may not rest on the allegations of his complaint, but must "set forth specific facts showing that there is a genuine issue for trial". FED R. CIV. P. 56(e). On a summary judgment motion, the Court evaluates the material in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587-588 (1986).

Under Title VII, it is unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C. §2000e-2(a)(1). The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business. 42 U.S.C. § 2000e(j).

3

In a Title VII action for religious discrimination, the plaintiff as a preliminary matter must show that (1) he had a bona fide religious belief that conflicted with an employment requirement; (2) he informed his employer of this belief; and (3) he was fired for failure to comply with the conflicting employment requirement. *Thomas v. National Ass'n of Letter Carriers*, 225 F.3d 1149, 1155 (10th Cir. 2000). The burden then shifts to the employer, who may utilize one of the following options: (1) conclusively rebut one or more elements of the plaintiff's prima facie case; (2) show that it offered reasonable accommodation; or (3) show that it was unable to reasonably accommodate the employee's religious obligations without undue hardship. *Thomas*, 225 F.3d at 1156.

**Title VII Analysis**

The Defendants have stipulated to the first two prongs required for a *prima facie* case of religious discrimination.[1] The only issue before the Court in this regard, therefore, is whether or not there is a genuine issue of material fact on Plaintiff's claim that he was fired for failure to comply with an employment requirement that conflicted with his religious belief.

In Paragraphs 11 and 12 of their Statement of Material Facts ("SMF"), Defendants set forth their factual basis for dismissing Plaintiff from his position. In Paragraph 11, they state that Plaintiff was dismissed for insubordination, misconduct, and negligence. This paragraph is factually supported by the affidavit of Karen Herrera, and the termination letter, Exhibit A. As supported by Exhibit A and Herrera's affidavit, Paragraph 12 states that the conduct of Plaintiff, leading up to his dismissal,

---

[1] Defendants do not argue that the term "religion" does not include Plaintiff's ministerial duties, or second job, as it were. To the contrary, Defendants stipulated that Plaintiff had a bona fide religious belief that conflicted with an employment requirement and that he informed his employer of this belief. Because the issue is not before it, the Court declines to address the issue of whether the term "religion", as used in Title VII, includes the duties of one engaged in the ministry of a particular faith.

included the facts that Plaintiff failed to show up for five consecutive shifts (December 14 to 21), twice reported for the wrong shift (December 12 and 29), arrived late (January 5), and left his position unsupervised on a number of occasions (December 22, December 28, January 4, and January 5).

Defendants also claim that Plaintiff explicitly refused to follow instructions from his supervisor when he stated "That's not going to happen" after being advised to adhere to the new shift schedule. (SMF ¶ 12; Deft's Ex. A). They further allege that Plaintiff compromised the safety of the staff and the public at large when he left his post without permission.[2]

Defendants have demonstrated that a critical element of Plaintiff's case lacks support in the record, namely a discriminatory reason for Plaintiff's dismissal. The burden now shifts to Plaintiff, who may not rest on the allegations of his complaint, but must "set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). In assessing it, I note that Plaintiff's Response is fraught with procedural defects. The Response was untimely under the provisions of D.N.M.L.R.-CIV. 7.3. It also exceeded the page limit and contained a significant amount of single-spaced text. D.N.M.L.R.CIV. 7.7. Additionally, he improperly submitted deposition testimony by inserting it into the text of his response, without certification or authentication. Typically, documents submitted to support or oppose a motion for summary judgment must be attached to a FED. R. CIV. P. 56(e) affidavit, or otherwise identified and authenticated. *Ortiz v. Wingard*, 173 F.Supp. 2d 1155, 1163 (D.N.M. 2001); *Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000); *Carmona v. Toledo*, 215 F.3d 124, 131 (1st Cir. 2000). Most importantly of all, Plaintiff failed to provide a statement of

---

[2] Neither the Statement of Material Facts nor Exhibit A states that Plaintiff's failure to appear for work scheduled on the Sundays constituted conduct leading to his dismissal.

5

the facts and did not specifically controvert Defendants' material facts, both of which are required under D.N.M.L.R. - CIV. 56.[3] These errors and omissions amount to a deplorable disregard for procedural rules.

Plaintiff's Response conclusively but non-specifically disputes Paragraphs 11 and 12 of the Statement of Material Facts. This in itself constitutes grounds to deem these material facts admitted under Local Rule 56. Plaintiff generally states that certain paragraphs are disputed and then claims that the basis of the disputes is set forth in unspecified portions of Plaintiff's deposition. This approach is clearly inadequate. Rather than grant Defendants' motion strictly on these procedural deficiencies however, I have painstakingly combed Plaintiff's deposition to ascertain whether it contains any factual basis to dispute the material facts alleged by Defendants.

As noted above, Plaintiff must establish the third prong of his *prima facie* case. To meet his burden, he must present facts showing a genuine issue as to whether or not he was dismissed for failure to comply with an employment requirement, in this case his December 1998 work schedule, that conflicted with his religious obligations.

Analysis of Plaintiff's testimony is difficult, given its vague and rambling nature. Plaintiff testified that he was required to be available to Mount Calvary Baptist Church on Wednesdays at 6:00 p.m., Mondays at 5:00 p.m. and 6:00 p.m., Tuesday "through the daytime", and Thursday at midday. (Pltf's Depo., pp. 65-72, as duplicated in Pltf's Resp., p. 8). However, at the time of Plaintiff's termination, Plaintiff was no longer employed by Mount Calvary; he was the minister at Adat

---

[3] "A memorandum in opposition to the motion [for summary judgment] must contain a concise statement of the material facts as to which the party contends a genuine issue does exist. Each fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the opposing party relies, and must state the number of the movant's fact that is disputed. All material facts set forth in the statement of the movant will be deemed admitted unless specifically controverted". D.N.M.L.R.-Civ. 56.1(b).

6

Yeshua's Ministries. [4]

From what I can deduce from Plaintiff's deposition, Plaintiff's ministerial duties at Adat Yeshua included Sunday morning worship, Sunday school services, Wednesday evening Bible training and prayer service at 6:00 p.m., Friday night choir practice at 6:00 p.m., administrative responsibilities on Mondays through Sundays from 8:00 a.m. until 3:30 or 4:00 p.m., and contractually-required pastoral responsibilities Tuesdays through Sundays. (Pltf's Depo., pp. 65-72, as duplicated in Pltf's Resp., pp. 10-11). Based on this testimony, it appears that Plaintiff had daily ministerial duties that would have conflicted with both the 6 a.m. to 2 p.m. and 2 p.m. to 10 p.m. work shifts. Based on Plaintiff's deposition testimony, he was unable to work on any day of the week.

When Plaintiff's schedule was changed in December 1998, Plaintiff testified that he "refused his schedule". Describing the new schedule, Plaintiff recalled:

> They had me scheduled to work on Sundays. It had me scheduled to work on day shifts, rotating shifts. I rotated from...I think it was 6:00 to 2:00 one week, 2:00 to 10:00 another week, and they had me scheduled to work Sundays. And I told both Ms. Herrera and Khalsa emphatically I would not work the schedule.

When asked what happened after he refused the schedule, Plaintiff responded as follows:

> A. I reported twice to my regular schedule, and the days that they had me scheduled for Sundays I didn't show up.
> Q. Now, when you didn't show up on Sundays, did you notify anybody?
> A. No, I didn't notify them. I notified them on the day in the office when they gave me the schedule. I told them I wouldn't work then under no conditions.

---

[4] It is unclear from the record exactly when Plaintiff assumed his ministerial duties with Adat Yeshua ministries. In his deposition, Plaintiff testifies that he worked at Mount Calvary until "1999...1998/1999", or "between 1997 and 1998". (Pltf's Depo., pp. 50, 64-65, as duplicated in Pltf's Resp., p. 7 and 9). At another point, he claims that "by the time I had gone through the orientation with [CYFD], Mount Calvary didn't exist anymore, and I was on this new ministry, which my schedule was a little more flexibile, and I knew that some of the things I couldn't have done when I was with Mount Calvary I could do on Yeshua's Ministries. And I made that known to Human Resources, as well, during the orientation." (Pltf's Depo., p. 95, as duplicated in Pltf's Resp., p. 14). Presumably Plaintiff's orientation commenced shortly after he was hired in February of 1998. Clearly, then, the December 1998 work schedule conflicted only with his obligations to Yeshua's Ministries.

7

Q. Did you show up at the other scheduled times that weren't the Saturdays and Sundays, according to the new schedules that they had made up?
A. I didn't show up for the rotating shift they put me on days, no, I did not. From the 6:00 to 2:00, no, I did not.
Q. And why was that?
A. Because it was understood again that I could not work the day shift.

Plaintiff also mentioned that when he received his new schedule, he stated "I [will] not work that schedule, and hold your breath until I do". When asked whether his supervisors reprimanded him for missing days other than Sundays, he conceded that they had complained, but that "I told them that I had already . . . I explained that I was not going to work the day shift and I was not going to work any Sundays". (Pltf's Depo., p.151, as duplicated in Pltf's Resp., pp. 23-24).

Having carefully reviewed the only factual material in the record on which Plaintiff relies, *i.e.*, his deposition, I conclude that he has not factually disputed Defendants' proffered nondiscriminatory reasons for his dismissal, as contained in Defendants' Statement of Material Facts, Paragraphs 11 and 12. He has shown no facts to dispute that he was fired for insubordination, failure to appear for work when scheduled, failure to provide notice when he was not going to come to work, and for leaving the facility during a scheduled shift without prior approval. What the record reflects is a lack of cooperation by Plaintiff and repeated failures to appear for work when scheduled, without notice to his supervisors. Plaintiff failed to factually rebut these different categories of misconduct or address them in any depth.[5] He has shown no facts to support a conclusion that he was fired for failing to come to work at times that his work schedule conflicted with his religious obligations. In fact, he

---

[5] Plaintiff acknowledged in his Response that other factors contributed to his termination, stating that his schedule was "fully satisfactory until Defendant's administrator had serious conflicts *over other matters* with Plaintiff." (Pltf's Resp., p. 29, emphasis added).

failed to come to work for shifts that he had previously worked.[6]  Plaintiff has simply not demonstrated specific facts, directly or by inference, that Defendants' stated reasons for his dismissal were connected to his religious endeavors.  There were ample reasons in the record for Plaintiff's dismissal, unrelated to his work as a minister.  I conclude that Plaintiff has not satisfied the third prong of his *prima facie* case.

Finally, I want to address the topic of accommodation.  Plaintiff's deposition reflects daily religious obligations.  It establishes that Plaintiff could not work *any* day of the week, without interference with his ministerial duties.  Plaintiff's own deposition contradicts any argument that he could have worked the 6 a.m. to 2 p.m. schedule without interfering with his ministerial duties.

Title VII is designed to require employers to provide reasonable accommodation to an individual to allow him to participate in his religion.  This case is unusual because, given Plaintiff's own testimony, virtually no amount of accommodation from Defendants would have allowed Plaintiff to meet his daily ministerial duties.

As stated in *Ansonia Bd. of Education v. Philbrook*, 479 U.S. 60, 68 (1986), *Thomas v. National Ass'n of Letter Carriers*, 225 F.3d 1149, 1156 (10th Cir. 2000) and *Lee v. ABF Freight System, Inc.*, 22 F.3d 1019, 1022 (10th Cir. 1994), "reasonable accommodation" does not guarantee that employees receive the accommodation of their choice.  Rather, "bilateral cooperation" is required to reconcile "the needs of the employee's religion and the exigencies of the employer's business". *Thomas*, 225 F.3d at 1155, quoting *Ansonia Bd. of Education v. Philbrook*, 479 U.S. 60, 69 (1986).  In a factually analogous case from the Eighth Circuit, the court emphasized the need for a "mutuality

---

[6] The Court notes that Plaintiff worked at CYFD Mondays through Fridays, 2 p.m. to 10 p.m. for several months without incident, prior to December 4, 1998.

of obligation", and held that when an employee "refuses to attempt to accommodate his own beliefs . . . he may render an accommodation impossible". *Chrysler Corp. v. Mann*, 561 F.2d 1282, 1285 (8th Cir. 1977). In both *Thomas* and *Lee*, the Tenth Circuit decided that an employer may permissibly schedule employees to work at times when there are known conflicts with religious obligations. It is not the employer's responsibility to find a replacement during those times; rather, it may be the employee's duty to remedy the situation by finding a coworker with whom to trade shifts, or using vacation time to ensure that particular days and times are free. *Thomas*, 225 F.3d at 1156; *Lee*, 22 F.3d at 1023. Indeed, the Supreme Court has held that employers may satisfy their duty to provide reasonable accommodation simply by virtue of utilizing a leave policy through which employees may request days off. *Ansonia*, 479 U.S. at 70. Employers are not expected to bear more than a *de minimus* cost, economically or in terms of efficiency, in accommodating employees with religious obligations. *Ansonia*, 479 U.S. at 67; *Lee*, 22 F.3d at 1023.

Plaintiff's actions do not reflect any attempt at "bilateral cooperation" as contemplated by the Tenth Circuit in *Thomas*. Rather than employing conciliatory means to resolve the problem, Plaintiff simply did not show up during his scheduled shifts, and brazenly refused to even use the appropriate call-in procedure to notify his employers that he would be absent. ("I didn't have to use the old procedure anymore, because I never did call in anymore". Pltf's Depo., p. 185, as duplicated in Pltf's Resp., p. 27). As noted above, Plaintiff refused to show up for shifts in the new schedule that he consistently worked under the old schedule without complaint.

Finally, as noted above, based on his own testimony, it would be impossible to accommodate Plaintiff. Plaintiff testified that his ministerial duties required his attention throughout the week. (Pltf's Depo., pp. 65-72, as duplicated in Pltf's Resp., pp. 10-11). CYFD could not have been

expected to tailor Plaintiff's schedule to meet each need. Following the *Thomas* and *Lee* rationale, to do so would undermine departmental efficiency and would likely involve additional costs, amounting to an "undue hardship" on the department.

**WHEREFORE,** for the reasons above-stated, Defendants' Motion for Summary Judgment (Docket No. 41) shall be granted, dismissing Plaintiff's religious discrimination claim, as contained in Count III of the First Amended Complaint. Plaintiff has concurred with Defendants' motion for summary judgment with respect to Counts I, II, IV and V of his First Amended Complaint; they are dismissed as well.

**IT IS THEREFORE ORDERED AND ADJUDGED** that all of Plaintiff's claims are dismissed. This case is hereby **dismissed in its entirety**. A Final Judgment reflecting this dismissal shall be entered simultaneously with the Memorandum Opinion and Order.

**IT IS SO ORDERED.**

_____
**UNITED STATES DISTRICT JUDGE**